Pearson, J.
 

 The evidence left it doubtful whether Taylor had “ lent his name ” to Gabriel Whitman by signing it on the piece of paper, with the intention that said Gabriel might write a note above it, for ■ the purpose of raising money, or whether Taylor had simply written his name on the paper, with the intention that the said Gabriel should keep the autograph as a
 
 toTeen
 
 or
 
 memento
 
 of friendship. Prom the manner in which the verdict was entered, this fact was not passed
 
 *50
 
 on, or fixed one way or the other. Plis Honor calls it a fraudulent note; and from the testimony of
 
 Micajah
 
 Martin, which is set out in the examination before the magistrate, and sent as a part of the case, and the circumstances attending the execution of the bond sued on, there was evidence tending to show that the name of Taylor was procured as a token of friendship merely, without an intention to authorise Gabriel Whitman to write a note above it; at all events, as the case is now before us, the defendants have a right to assume that state of facts.
 

 If one writes a note above the signature of another, which happens to be at the foot of a letter, it is clearly forgery ; so if he obtains the signature as an autograph, to be used as a
 
 keep-sake,
 
 and writes above it, it is a forgery; for forgery may be committed as well by the fraudulent application of a false instrument to a true signature, as by a fraudulent application of a false signature to a true instrument. Chitty’s Crim. Law, 1038. So we have this case : Taylor, upon whom the forgery has been committed, agrees that upon his being “ secured and indemnified against the payment of the money purporting to be due on the fraudulent promissory note,”, by execution of the bond now sued on,
 
 “
 
 he would have nothing to do with the matter, further than the law required.” Upon receiving the bond sued on, he handed up the false note to Gabriel Whitman, or his agent, telling him that he could not stop the prosecution, as that was a 'matter in which the State was concerned, and not under his control, but that he would not appear in the prosecution unless he was summoned to do so.
 

 We think this was
 
 compounding
 
 an indictable offence, and consequently, that a bond given in consideration thereof, cannot be made the ground of an action in a Court of justice. - How else can an individual compound a felony or other criminal offence, except by agreeing not to prosecute, and not to tell what he knows unless he is summoned as a witness, and by giving up the false instrument, which will be most material evidence on the part of the State ?
 

 
 *51
 
 The efficacy of punishment depends more upon its certainty than its severity. Hence, it is a matter of public concern, that all violations of the criminal law should be detected and punished. So that any individual who knows that an indictable offence has been committed, and conceals it, thereby fails to discharge the duty of a good citizen. Upon this principle, the bare
 
 concealment
 
 of treason or felony is an indictable of-fence, and the offence is aggravated by
 
 compoundioig
 
 the felony — that is, by an agreement not to prosecute or make known what has come to the knowledge of the party"; for, although he is,the person directly injured, the law does not allow him to take care of his private interest by accepting compensation at the expense of the public justice. In offences less than felony, this concealment or compounding is not indictable, but it is, nevertheless, against the policy of the law, and the due course of justice ; and the Courts would not be true to themselves if they enforced a contract founded on such a consideration. If he secures himself by an executed agreement, well; but if he relies on an executory agreement, having “ cut loose” from the public, the Courts will not give aid in furtherance of his selfish attempt. This is familiar doctrine. The difficulty in the case is in making the application.
 

 His Honor was of opinion that the consideration of the borid sued on was not against public justice. In this there is error. According to the view we take of the case, Taylor was not at liberty to take care of his private interest by accepting an indemnity, and thereby depriving the State of an
 
 actme
 
 prosecutor; which is one of the means relied on for the conviction of offenders. The testimony of Taylor, when contrasted with that of Martin before the committing magistrates, in reference to the same transaction, suggests the fear that this
 
 doucewr
 
 had taken effect. "When the person directly interested is
 
 appeased before the
 
 1/rial, he is under strong temptations to favor the offender.
 

 If, upon the next trial, it should turn out that, in point of fact, Taylor did sign his name with the intention that Gabriel "Whitman should write a note above it, and afterwards took
 
 *52
 
 advantage of ’Whitman’s alarm by reason of the'proceedings instituted by the magistrates, and induced his brothers to execute their bond for his indemnity, by giving up the note, and agreeing not to prosecute, or give evidence, unless he was summoned or required to do so, an interesting question will be presented.
 
 Venire de novo.
 

 Pee Cuexam. Judgment reversed.